1

2

The Honorable Marsha J. Pechman

3

4

5

6

7          UNITED STATES DISTRICT COURT
    FOR THE WESTERN DISTRICT OF WASHINGTON
8                      AT SEATTLE

9   DAVID RHODES,

10                          Plaintiff,                    Case No. C09-265MJP

11              v.                              **ORDER GRANTING IN PART AND
                                                DENYING IN PART SUMMARY
12   CITY OF FEDERAL WAY, et al.,               JUDGMENT**

13                          Defendants.

14

15

16          This matter comes before the Court on Defendant City of Federal Way's ("Federal Way")

17   motion for summary judgment (Dkt. No. 35) and Defendant SCI Infrastructure, LLC's ("SCI")

18   motion for summary judgment (Dkt. No. 31).  Having reviewed the motions, Plaintiff's

19   responses (Dkt. Nos. 41, 42), Defendants' replies (Dkt. Nos. 43, 45), and all papers submitted in

20   support thereof, the Court GRANTS in part and DENIES in part Federal Way's motion and

21   GRANTS in full SCI's motion for summary judgment.  The Court GRANTS in part and

22   DENIES in part Defendants' unopposed motions to strike contained in SCI's reply brief.  (Dkt.

23   Nos. 43 at 4, 45 at 2-3.)

24                                    **Background**

25          In 2006, Federal Way sought to enlarge Highway 99, which Plaintiff's strip mall abuts.

26   To accomplish the enlargement, Federal Way required taking an eight-and-a-half foot portion of

ORDER GRANTING IN PART AND DENYING IN PART
SUMMARY JUDGMENT - 1

1    Plaintiff's strip mall.  Federal Way filed an eminent domain action against Plaintiff in King

2    County Superior Court.  The parties eventually settled the action and, as set forth in a settlement

3    agreement, Plaintiff conveyed the eight-and-a-half foot strip to Federal Way for $236,000 and

4    several improvements to his strip mall.

5        Through the settlement agreement, Federal Way promised to rebuild a storm drain system

6    on Plaintiff's property, replace the asphalt and curbs in Plaintiff's parking lot, and do other

7    incidental work on his property.  (Smith Decl. Ex. 2.)  Federal Way agreed to complete "all the

8    improvements within Rhodes' parking lot area" within 120 days of commencing work.  (Smith

9    Decl. Ex. 2 at 3.)  As part of the settlement, Plaintiff gave Federal Way and SCI a right of entry

10   onto the property to complete this construction.  (Smith Decl. Ex. 2 at 41.)  The right of entry

11   "commence[d] at such time as the City of Federal Way issue[d a] NOTICE TO PROCEED to the

12   prime contractor" which would end "at the completion of the Project."  (Id.)  The "Project" refers

13   to the expansion of Highway 99, not just the improvements to Plaintiff's property.  (Id.)  Federal

14   Way sent the Notice to Proceed to Plaintiff, and established May 1, 2007 as the date the right of

15   entry was triggered.  (Roberts Decl. Ex. 1. at 1.)  Plaintiff authorized SCI to be on the property at

16   all times through the right of entry.  (Dkt. No. 32 Ex. 3.)

17       SCI began work on Plaintiff's property on August 20, 2007.  Federal Way contends that

18   the 120 day work period set out by the settlement agreement began on August 15, meaning that

19   construction was to end on December 12, 2007.  (Dkt. No. 35 at 5.)  Plaintiff does not dispute

20   this.  Work was not complete within 120 days.  As of December 14, 2007, there were eleven

21   outstanding items to be completed, including final paving of part of one of the driveways, some

22   landscaping, and striping in the parking lot.  (Roberts Decl. Ex. 4 at 4.)  Plaintiff stated in his

23   deposition that he believed the work was completed in February, 2008. (Dkt. No. 32-2 at 3.)

24   Plaintiff submits that the paving of the driveway and asphalt parking area was defective because

25   the asphalt was not compressed sufficiently and has unraveled in places.  (Rhodes Decl. ¶ 10.)

26   Federal way has admitted that the paving was defective.  (Rhodes Decl. Ex. E.)  On January 11,

2008, Plaintiff filed a claim for $100,000 with the City for lost rents as a result of the construction.  (Smith Decl. Ex. 4.)  As of January 18, 2008, there were six items remaining. (Roberts Decl. Ex. 4 at 7.)  As of February 1, 2008, there were only two items left.  (Id. at 8.)

Unrelated to the construction project, Plaintiff has had several disputes with Federal Way regarding zoning and code enforcement at his strip mall.  Plaintiff leases some of the units to churches, although the property is not zoned for such use.  Starting in 2006, Federal Way brought code enforcement actions against Plaintiff for this improper zoning use.  (Smith Decl. Ex. 6.)  In 2006, Federal Way and Plaintiff briefly litigated the issue and Plaintiff was found in violation.  (Id.)  In 2008, Federal Way reinvestigated and found continuing violations.  (Id.) Plaintiff appealed and the zoning enforcement was found valid.  (Id.)

Plaintiff filed a lawsuit in King County Superior Court on February 3, 2009.  Plaintiff asserts four causes of action against both Defendants: (1) Interference with quiet enjoyment/Trespass; (2) Inverse condemnation/Taking under state and federal law; (3) Breach of settlement agreement; and (4) Tortious interference with a business relationship.  (Compl. ¶¶ 4.1-4.20.)  Defendants removed the case to this Court, and now move for summary judgment. Federal Way has asserted a cross claim against SCI, which has been severed from Plaintiff's claims.  (See Dkt. Nos. 18, 28.)

**Analysis**

A.    Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Genuine issues of material fact are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Because a mere scintilla of evidence is insufficient to create a factual dispute, the non-moving party must set forth specific facts demonstrating a genuine issue of fact for trial.  Id. at 252.  In

ORDER GRANTING IN PART AND DENYING IN PART
SUMMARY JUDGMENT - 3

1    ruling on summary judgment, the court does not weigh evidence to determine the truth of the

2    matter, but "only determine[s] whether there is a genuine issue for trial." Crane v. Conoco, Inc.,

3    41 F.3d 547, 549 (9th Cir. 1994). The Court notes that Federal Way urges the Court to employ

4    the following standard: that "plaintiff must present enough competent evidence to overcome the

5    defendant's existing evidence, in order to be entitled to summary judgment." (Dkt. No. 35 at

6    18.) This is an incorrect statement of law that the Court does not adopt.

7    B.      Interference with Quiet Enjoyment/Trespass

8            Defendants move to dismiss Plaintiff's quiet enjoyment/trespass claim. (Dkt. Nos. 31 at

9    4-5, 35 at 9-11.) Plaintiff makes no response and raises no genuine issue of disputed fact that

10   precludes summary judgment.

11           Although Plaintiff's first claim is titled "interference with quiet enjoyment," the Court

12   treats it as one for trespass. A quiet enjoyment claim generally requires that a lease govern the

13   relationship between the parties. See Cherberg v. People's Nat'l Bank of Wash., 15 Wn. App.

14   336, 343 (1976), rev'd on other grounds, 88 Wn.2d 595 (1977). There is no lease at issue

15   between the parties and Plaintiff has neither briefed the issue nor offered any evidence

16   contradicting the evidence submitted by Defendants. While this alone is fatal to Plaintiff's

17   claim, Plaintiff appears to have pleaded the claim as one for continuing trespass. (Compl. ¶¶ 4.3-

18   4.5.) Trespass is an interference with the right to exclusive possession of property. Grundy v.

19   Brack Family Trust, 151 Wn. App. 557, 566 (2009). Intentional trespass occurs only where there

20   is "(1) an invasion of property affecting an interest in exclusive possession, (2) an intentional act,

21   (3) reasonable foreseeability that the act would disturb the plaintiff's possessory interest, and (4)

22   actual and substantial damages." Id. at 567 (quoting Wallace v. Lewis County, 134 Wn. App. 1,

23   15, (2006)). Consent to enter on the land of the plaintiff is a complete defense. Restatement

24   (Second) of Torts § 167 (1965).

25           Plaintiff's trespass claim fails because he consented to have Federal Way and SCI enter

26   onto his land through the right of entry he executed. At his deposition, Plaintiff admitted that he

ORDER GRANTING IN PART AND DENYING IN PART
SUMMARY JUDGMENT - 4

1  never revoked the right of entry.  (Dkt. No. 32, Ex. 1.)  The right of entry was in force

2  throughout the entire period of construction, and all entry onto Plaintiff's land was with full

3  consent.  The Court DISMISSES Plaintiff's claim and GRANTS Defendants' motions.

4  C.     Inverse Condemnation/Taking

5        Defendants move to dismiss Plaintiff's Section 1983 takings claim, which is premised on

6  the Washington State and United States Constitutions.  (Dkt. Nos. 31 at 5, 35 at 11-12.)  Plaintiff

7  does not respond to the motions and no dispute of fact precludes granting Defendants the relief

8  they seek.

9        As an initial matter, Plaintiff's claim is improperly drafted.   Plaintiff alleges that "the

10  WSDOT, their [sic] agents and employees," caused a taking of his land.  (Compl. ¶ 4.9.)

11  WSDOT is not a party to this case.  Plaintiff does not allege that any other party named in this

12  suit caused a taking.  The alone is fatal to the claim.  The Court considers briefly the merits.

13        A "taking" occurs when government conduct interferes with the use and enjoyment of

14  private property, with a subsequent decline in market value.  Martin v. Port of Seattle, 64 Wn.2d

15  309, 320 (1964).  The term "inverse condemnation" is used to describe an action alleging a

16  governmental "taking," brought "to recover the value of property which has been appropriated in

17  fact, but with no formal exercise of the power."  Id. at 310 n.1.  The elements of inverse

18  condemnation are: "(1) a taking or damaging (2) of private property (3) for public use (4)

19  without just compensation being paid (5) by a governmental entity that has not instituted formal

20  proceedings."  Phillips v. King County, 136 Wn.2d 946, 957 (1998).  To establish a violation of

21  the Fifth Amendment of the United States Constitution, the plaintiff must show that the City

22  deprived him of a property interest without due process.  See Parratt v. Taylor, 451 U.S. 527,

23  536-37 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).

24         Plaintiff's claims against Defendants fail because he has not demonstrated any

25  deprivation of property or economic use of his land.  Federal Way fully compensated him for the

26  eight-and-a-half foot strip of land and agreed to provide certain improvements over a 120 day

ORDER GRANTING IN PART AND DENYING IN PART
SUMMARY JUDGMENT - 5

1   period.  While the construction exceeded 120 days, there is no evidence this caused Plaintiff to

2   suffer any loss of his property or loss of financial use of his property.  Deposition testimony

3   shows that the property was always accessible and that there was parking for customers and

4   tenants, in spite of the defective pavement.  (Rhodes Dep. at 113-17.)  Additionally, SCI is not a

5   governmental entity and Plaintiff has failed to produce any argument or facts as to how SCI

6   might be liable under § 1983 or inverse condemnation.  This alone is fatal to Plaintiff's claim

7   against SCI.  Plaintiff's takings claim is DISMISSED and Defendants motions are GRANTED.

8   D.      Breach of Settlement Agreement

9           SCI contends that it was not a party to the settlement agreement and is therefore not

10  liable. (Dkt. No. 31 at 5.)  A party asserting a breach of a settlement agreement must satisfy the

11  traditional elements of a breach of contract claim.  Trotzer v. Vig, 149 Wn. App. 594, 605

12  (2009).  A breach of contract is actionable if the contract imposes a duty, the duty is breached,

13  and the breach is a proximate cause of damage to the claimant.  N.W. Indep. Forest Mfrs. v.

14  Dep't of Labor & Indus., 78 Wn. App. 707, 712 (1995).  Generally, only a party to a contract

15  may be sued for breach.  See Torgerson v. One Lincoln Tower, LLC, 116 Wn.2d 510, 517

16  (2009); Trotzer, 149 Wn. App. at 605.  Plaintiff offers no basis on which to conclude SCI is a

17  party to the settlement agreement or is otherwise bound by its terms.  The Court finds no basis to

18  hold SCI liable for breach.  SCI's motion is GRANTED and the claims against it DISMISSED.

19          Federal Way admits it breached the settlement agreement, but moves for summary

20  judgment on the basis that Plaintiff suffered no lost rental income or damages as a result of the

21  construction overrun.  (Dkt. No. 35 at 17-20.)  Plaintiff has not produced any evidence of lost

22  rental income that resulted from the construction overrun and Federal Way is entitled to relief on

23  this portion of the breach of contract claim.  However, a question of fact remains as to the

24  damages Plaintiff suffered due to the paving defects—an issue on which Federal Way has not

25  moved for summary judgment.

26

ORDER GRANTING IN PART AND DENYING IN PART
SUMMARY JUDGMENT - 6

Before reaching the merits of Federal Way's motion, the Court must first address Defendants' motion to strike. Plaintiff does not respond to Defendants' motion, which may be considered an admission the motion has merit. See Local Rule CR 7(b)(2). Defendants move to strike paragraphs four and eight of Plaintiff Rhodes' declaration that they assert contain inadmissible hearsay. (Dkt. Nos. 43 at 4, 45 at 2-3.) Rhodes testifies in paragraph four, lines four to six and paragraph eight, lines three to five as to the mental state of several of his tenants, which is inadmissible hearsay.[1] See Fed. R. Evid. 801, 802, 803. These statements are STRICKEN and will not be considered.[2] The Court also STRIKES in part paragraphs twelve and thirteen to the extent that they contain evidence of forensic expert testimony, which the Court previously barred Plaintiff from using. (See Dkt. No. 27.) However, the Court considers the statements in these paragraphs to the extent that they show there is some cost that is required to fix the defective pavement. Defendants move to strike German Martinez's declaration, arguing that he has no personal knowledge of why his church left Rhodes' property because he was not the lease-holder. The motion is DENIED. Mr. Martinez purports to have personal knowledge because he is on the Board to Regence of a church that leased a space from Rhodes. (Martinez Decl. ¶ 1.) There is no reason why Mr. Martinez may not opine on issues for which he has personal knowledge, regardless of whether he is the officially-named lease-holder. Defendants also move to strike the declaration of James Dore, Jr., Plaintiff's attorney. (Dkt. No. 45 at 3.) The Court STRIKES paragraph ten of Mr. Dore's declaration, in which he makes legal conclusions masquerading as statements of fact. Mr. Dore has not demonstrated how he has

---

[1] For example, Plaintiff states that Pastor Sag Filipo left his property because he was "upset with the project as it lingered from February through July, 2008." (Id. ¶ 4.) This is not only hearsay, but it is also contradicted by a letter from Pastor Filipo in which the Pastor explains to Plaintiff that the reason for leaving was due to "the City of Federal Way continuously harassing and posting notice to vacating [sic] us from the premises." (Dkt. No. 44 at 23.) There is no mention of construction as a reason for Pastor Filipo's departure.

[2] Even if the Court were to consider this evidence, it would not change the Court's decision as to Plaintiff's lost rents portion of his claim.

ORDER GRANTING IN PART AND DENYING IN PART
SUMMARY JUDGMENT - 7

1   personal knowledge of whether Plaintiff's tenants were harassed or intimidated, or why they left

2   Plaintiff's property.  The Court will not consider this statement.

3          Considering the admissible evidence, the Court finds no facts supporting Plaintiff's claim

4   that he lost rental income due to the construction overrun.  Plaintiff states that one church did not

5   renew its lease in February 2008, but there is no evidence as to why this church did not renew its

6   lease.  (Rhodes Decl. ¶ 7.)  No other tenant is alleged to have left as a direct result of the project

7   overrun.  German Martinez's declaration also fails to create a factual dispute barring summary

8   judgment.  Mr. Martinez states that one of the "contributing factor[s]" to the church's departure

9   was "the City's contractor repeatedly occupied portions of the parking lot area leaving little or no

10  parking spaces for the church members, such that they would have to park off the premises."

11  (Martinez Decl. ¶ 7.)  This statement does not show that the departure was in any way tied to the

12  overrun, as distinct from the construction.  To the contrary, Mr. Martinez explains that main

13  reasons the Church left was because the building was not properly zoned for church use.  (Id. ¶

14  6.)

15         Federal Way produces evidence that at the beginning of the project Plaintiff complained

16  that he started losing tenants.  Brian Roberts, the City's project engineer, received complaints as

17  early as September 17, 2007 that Plaintiff was losing tenants.  (Roberts Decl. ¶ 11.)  Plaintiff

18  complained to Mr. Roberts again on October 7, 2007 that he lost five tenants as a result of the

19  construction.  (Id. ¶ 12.)  There is no other record of similar complaints after December 12, 2007,

20  the date when the project should have been completed.  The evidence contains no evidence that

21  Plaintiff lost tenants from the construction overrun as distinct from the project itself.  Plaintiff

22  has not created a factual dispute and Federal Way's motion on this aspect of Plaintiff's claim is

23  GRANTED.

24         Federal Way has not, however, demonstrated an absence of factual dispute as to whether

25  Plaintiff suffered damages due to the defective paving at his strip mall.  Construing the complaint

26  and facts in Plaintiff's favor, the Court finds that a genuine issue remains as to how much, if

ORDER GRANTING IN PART AND DENYING IN PART
SUMMARY JUDGMENT - 8

1   anything, Plaintiff has suffered as a result of Federal Way's admitted breach of contract

2   regarding the defective paving.  This issue must be resolved by a fact finder.

3        Plaintiff's claim as to lost rental income is DISMISSED.  Federal Way's motion as the

4   claim based on damages tied to the defective pavement is DENIED.

5   E.   Tortious Interference

6        Defendants move to dismiss Plaintiff's tortious interference claim on the basis that there

7   is no evidence that either party acted towards Plaintiff with an improper motive or means.

8   Defendants are entitled to relief.

9        Tortious interference with a business or contractual relationship requires Plaintiff to

10  satisfy five elements: "(1) the existence of a valid contractual relationship or business

11  expectancy; (2) knowledge of their relationship or expectancy on the part of the interferer; (3)

12  intentional interference inducing or causing a breach or termination of the relationship or

13  expectancy; (4) that defendants interfered for an improper purpose or used improper means; and

14  (5) resultant damage."  Leingang v. Pierce Co. Med. Bureau, Inc., 131 Wn.2d 133, 157 (1997).

15  Plaintiff must demonstrate an intent to interfere with for an improper purpose or by use of

16  improper means.  Pleas v. City of Seattle, 112 Wn.2d 794, 804 (1989).

17       Defendants have shown that they did not interfere with Plaintiff's business for an

18  improper purpose or through improper means, and Plaintiff raises no dispute of fact precluding

19  relief.  Plaintiff expressly permitted SCI and Federal Way to enter on his land to execute the

20  settlement agreement and make certain improvements to the land.  There is no evidence that the

21  project overrun was the result of any nefarious plot or malevolent intent.  Federal Way's project

22  engineer, Brian Roberts, states that he worked with Plaintiff to address all of his complaints and

23  that he agreed with the need to repair the defective pavement.  (Roberts Decl. ¶¶ 10-22.)  Mike

24  Scoccolo, the manager of SCI, states that he tried to work with Plaintiff and "minimize any

25  inconvenience to the tenants so that the landlord tenant relationship between Plaintiff and his

26  tenants would remain intact."  (Scoccolo Decl. ¶ 5.)  Plaintiff points to no facts of any improper

ORDER GRANTING IN PART AND DENYING IN PART
SUMMARY JUDGMENT - 9

1    motive or means with regard to the work performed on his property that could satisfy this

2    element of his claim.

3           Federal Way has also demonstrated that no facts support Plaintiff's claim that the City's

4    code enforcement was undertaken for an improper purpose or through improper means.[3]

5    Plaintiff states that many of his church tenants were upset when code enforcement agents came

6    to enforce the zoning code and that some of those tenants left.  (Rhodes Decl. ¶¶ 4, 8.)  He points

7    to no evidence that the enforcers acted out of an improper means or motive.  Federal Way points

8    to undisputed evidence that it sought to enforce the zoning code because the strip mall lacked

9    proper safety measures and other aspects to qualify for an "assembly" space under Federal

10   Way's zoning code.  (Smith Decl. Ex 6.)  Enforcement throughout 2008 was lawful, even though

11   Plaintiff appealed the decision.  As the Hearing Examiner's report sets forth, the enforcement

12   proceedings in 2008 were routine and served the City's interest in making sure the buildings

13   were safe.  (Id.)  Plaintiff's opposition relies on Mr. Martinez's statement that Federal Way

14   "repeatedly and constantly harassed the tenants of Suite N."  (Martinez Decl. ¶ 3.)  Mr. Martinez

15   explains that Federal Way "often appeared on the property claiming the tenant was in violation

16   of City code" and that "[i]t was our position that the tenant was not in violation of any City

17   code."  (Id. ¶¶ 3-4.)  Mr. Martinez's declaration evidences nothing more than the fact that he

18   disagreed with the enforceability of the code and found the City's action objectionable.  This

19   does not raise a genuine issue of fact as to Federal Way's intent because there is no

20   particularized evidence to substantiate Plaintiff's claim.  See Anderson, 477 U.S. at 252.

21          The Court GRANTS Defendants' motions on this issue and DISMISSES Plaintiff's

22   tortious interference claim.

23

24

25   [3] Plaintiff admits that there is no connection between the overrun of the project and the code
     enforcement.  (Dkt. No. 43 at 10.)
26

ORDER GRANTING IN PART AND DENYING IN PART
SUMMARY JUDGMENT - 10

1

**Conclusion**

2      The Court GRANTS SCI's motion for summary judgment in full.  SCI has demonstrated

3  an entitlement to relief in the absence of any disputed issues of material fact.  The Court

4  GRANTS Federal Way's motion for summary judgment on Plaintiff's trespass, takings, and

5  tortious interference claims.  The Court GRANTS in part and DENIES in part Federal Way's

6  motion for summary judgment on Plaintiff's breach of settlement agreement claim.  Plaintiff's

7  claim for damages caused by the defective paving contains disputed issues of fact that preclude

8  summary judgment.

9      The Clerk shall transmit a copy of this Order to all counsel of record.

10      Dated this 16th day of March, 2010.

11

12

13

Marsha J. Pechman
14  United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING IN PART AND DENYING IN PART
SUMMARY JUDGMENT - 11